UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Docket No. 09-CR-10261-NMG |
| JERMAINE FENTON, Defendant. | ) ) ) ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Jermaine Fenton, respectfully submits this memorandum to assist the Court in sentencing. Mr. Fenton pleaded guilty to a three-count indictment charging him with unlawful re-entry of a deported alien, in violation of 8 U.S.C. § 1326, Possession of a Firearm and Ammunition by a Felon, 18 U.S.C. §922 (g) (1) and Possession of a Firearm and Ammunition by an Alien Illegally in the U.S., 18 U.S.C. §922 (g) (5). Defendant is in agreement that his Total Offense Level is 23 and that at a Criminal History Category ("CHC") of III applies, his guidelines sentencing range ("GSR") is 57-71 months. The defendant disagrees with the Guideline calculations applicable to Count 1 unlawful re-entry but under the grouping principles for the separate counts the total offense level is not affected and remains at Level 23.

The defendant suggests for the reasons that follow that an appropriate sentence in this case would be 40 months incarceration followed by 3 years of supervised release and requests that the Court grant the proposed variance.

1

## The Advisory Guidelines calculation

In the wake of Booker and its progeny, this Court must impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth at 18 U.S.C. § 3553(a) (2). See United States v. Booker, 125 Sect. 738 (2005). The Court is required to compute the GSR as a "starting point and the initial benchmark." Gall v. United States, 128 Sect. 586, 596 (2007).

Defendant disagrees with the Pre-Sentence Report's (PSR) Guideline calculation as to Count 1 Illegal re-entry. The issue for the Court's consideration is whether Mr. Fenton's prior Massachusetts state conviction for simple assault and battery is a "crime of violence" that warrants a 16-level enhancement of the base offense level under U.S.S.G. § 2L1.2(b)(1)(A)(ii)., The defendant moves that the factual allegations related to this prior conviction be stricken from the PSR.

In relation to count 1, the PSR was correct in establishing the base offense level in Mr. Fenton's case at 8 pursuant to U.S.S.G. § 2L1.2 (a). A 12 level enhancement under § 2L1.2(b)(1)(B) would also apply due to a conviction for possession with intent to distribute a Class B substance from 2003 in which a sentence of 13 months or less was given.  This would put count 1 at an offense level of 20 not 24.  The other two charges are correctly calculated to be level 24.  The combined total offense level for all charges remains the same under the grouping principles of U.S.S.G. §3D1.4 in that Count 1 whether calculated as a level 20 or 24 does not affect the total combined offense level of

the charges; after a 3 point reduction for acceptance the combined total offense level still remains a 23.

As to the guideline calculation of Count 1, a charge in the statutory pleading form is not, alone, sufficient to establish that a simple assault and battery under M.G.L.c. 265 §13A is a "crime of violence" as defined by U.S.S.G. §2L1.2 (b) (1) (A) (ii). This First Circuit has repeatedly accepted the determination by the courts of the Commonwealth of Massachusetts that the Massachusetts assault and battery statute (M.G.L.c.265 § 13A), that sets out a misdemeanor under Massachusetts law, encompasses two forms of the offense, one a violent offense and one a non-violent offensive touching. Shepard v. United States, 544 U.S. 13, 26 (2005), held that where a statute encompasses both a generic violent felony and non generic offense, the inquiry into the nature of a conviction is limited to examination of the charging document, the terms of the plea agreement, a transcript of a colloquy in which the defendant confirms the factual basis for the plea or comparable judicial record of the information. In Mr. Fenton's case, the PSR indicates that he received a continuance without a finding ("CWOF") disposition for a Massachusetts assault and battery charge in April of 2000 which was then revoked and a finding of guilt was entered in August 2003. See PSR ¶ 54. Before an individual should be subjected to an ACCA, a career offender, or a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for a "crime of violence" based on a state court misdemeanor conviction for an offense that may be committed in both violent and non-violent ways, the government must be required to establish more than the issuance of a complaint using boilerplate language. With a statute that proscribes non-violent as well as violent offenses and a statutory form complaint used for all offenses encompassed by the statute

regardless of their nature, the simple fact of a plea does not even provide a basis for determining whether the offense charged was the violent form of the offense included in the statute. It certainly provides no basis for determining the nature of the offense to which defendant pled. After Shepard, that information must come in the form of a transcript of the plea proceeding, an admission by the defendant, or a reflection of the form of the offense in the judgment. In Johnson v. United States, No. 08-6925, the Supreme Court held that the Florida felony offense of battery by "[a]ctually and intentionally touch[ing]" another person does not have "as an element the use . . . of physical force against the person of another and thus does not constitute a "violent felony" under the ACCA. The Court interpreted the federal definition of "physical force," as that term is used in 18 U.S.C. § 924(e)(2)(B)(I), to require violent force capable of causing pain and or injury. Johnson, 08-6925, pp. 5-9. Like M.G.L. c. 265 § 13A, the Florida battery statute at issue describes more than one way in which the law can be violated.  The least of the acts described by the statute is a nonconsensual touching which is analogous to the non-violent or offensive form of assault and battery contemplated by the Massachusetts statute. In Mr. Fenton's case, the government can produce no more evidence than what was put forth in Johnson. The charging document for the assault and battery we are dealing with in Mr. Fenton's case utilize the boilerplate language "did assault and beat". Even utilizing the modified categorical approach cited in Taylor v. United States, 495 U.S. 575 (1990), examining the statutory definition of the offense rather than the particular facts of a case, this Court cannot conclude, given the holding in Johnson, that these charges involved the use of "physical force" of the violent form covered by the Massachusetts statute.

1. <u>The Nature and Circumstances of the Offense and Mr. Fenton's History and Characteristics</u>

(a) <u>The Nature and Circumstances of the Offense</u>

On July 5, 2009, Mr. Fenton was discovered to have a loaded .40 caliber handgun on his person after the vehicle he was in was stopped by the Boston Police. He had not discharged this weapon and was cooperative with the police. Mr. Fenton agreed to speak with the police and made a recorded statement admitting that this weapon was in his possession and that he carried it for his own protection. Mr. Fenton was the backseat passenger of the vehicle, his co-defendant Ricardo Campbell was driving the vehicle and also found to be in possession of a weapon. A front seat passenger was released at the scene.

(b) <u>History and Characteristics of Mr. Fenton and reasons for a downward variance from the advisory guidelines</u>

Mr. Fenton is a 32 year old citizen of Jamaica. He is a single child who was raised at birth by a paternal uncle and aunt, George and Evadnia Griffith, his parents separated prior to his birth. Mr. Griffith, his uncle, was an alcoholic who physically abused his wife and Mr. Fenton. Mr. Fenton recalls having his teeth knocked out twice by Mr. Griffith as well as being starved for days. At the age of 5 Mr. Fenton went back to living with his Mother, Jeannette Allen. When Mr. Fenton was 10 he began spending summers with his father, Oswald Fenton who lived in New York. At the age of 15 he moved in

with his father in New York as a permanent resident alien. He moved to Massachusetts when he was 20, in 1998, to live with his Mother who had moved there.  Mr. Fenton was eventually deported in 2004.  He returned to Boston in 2007 to be with his family and to work since he had little family or opportunity to make ends meet in Jamaica.    He has never married; he has an 8 year old son who resides in Massachusetts with his former girlfriend.  He also has a strong connection to his current girlfriend's son, age 7, who he treats as a step-child.  Prior to his arrest he was living with Jessica Owens, his girlfriend, and caring for his Mother who is sick.  During this time he worked for his uncle helping to sell Jamaican foods from a van in the Boston area.  See PSR ¶ 71-96.  Character letters from those who know him best, family and friends are attached hereto as exhibit 1.

      Mr. Fenton's criminal history is made up of 2 convictions involving his use of marijuana, the incidents occurring in 1999 and 2003, and one domestic altercation occurring in 1997 with a former girlfriend where no injuries or medical attention was reported. His 2003 marijuana conviction is for possession of a small baggie of marijuana and 2 "blunt" cigars containing marijuana for which a conviction of possession with intent to distribute was entered. See PSR ¶ 54-56.  These are the offenses that place him at a criminal history category III.   Mr. Fenton's criminal history category III over represents his true criminal history and is reason for a lesser sentence.  He has never been charged with a serious crime of violence such as armed or unarmed robbery, home invasion, or assault with intent to murder or kill. Nor has he ever been charged with possession or sale of any drug other than marijuana.

      The defendant suggests that the goal of providing him with various forms of correctional treatment is not served by a guidelines sentence. As an immigration detainee,

Mr. Fenton will be disqualified from participating in the various educational and vocational programs offered by the Bureau of Prisons. As an example, the 500 hour Residential Drug Abuse Program which provides substance abuse treatment and an opportunity to earn anywhere from 8-12 months off of a criminal sentence would not be available to Mr. Fenton.. See 28 CFR § 550.55(b). Mr. Fenton is unable to benefit from the Fast-Track programs available in other districts which take into consideration his imminent deportation.  The lack of a Fast-Track program can be grounds for a downward variance in his sentence. See US v Rodriguez, 527  F.3d 21 (1st Cir. 2008). In addition to disqualification from beneficial prison programs and lack of a Fast Track program, Mr. Fenton's deportation will require an extra period of custody with ICE of unknown duration beyond whatever sentence this Court imposes.

      Mr. Fenton served 63 days in state custody upon his arrest for this case, from July 5, 2009 through September 8, 2009, prior to being taken into federal custody. It is requested that the Court's sentence reflect the time spent in state custody as it will not be credited by the Federal Bureau of Prisons.  The defendant is indigent so a waiver of any applicable fines is appropriate.

## Conclusion

      For the reasons described, Mr. Fenton submits that a sentence of 40 months followed by 3 years of supervised release is sufficient, but not greater than necessary, to meet the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Dated: September 1, 2010								Respectfully submitted,
											Jermaine Fenton,
											By his attorney,

											/S/ FRANK FERNANDEZ
											Francisco Fernandez
											4 Longfellow Place, 35th Floor
											Boston, MA  02114
											617-227-2800


<u>Certificate of Service</u>

  I certify that a copy of this Motion and Memorandum has this day been forwarded to each party by forwarding via ECF filing system, those interested parties not part of the ECF filing system will be mailed a hard copy..


Dated: September 1, 2010								/S/ FRANK FERNANDEZ
											Francisco Fernandez

8